IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RITA G. STELLAR, Personal      :      CONSOLIDATED UNDER
Representative for the Estate  :      MDL 875
of Frank J. Schaffer, and      :
MARY SCHAFFER, as Surviving    :
Spouse,                        :
                               :
     Plaintiffs,               :
                               :
     v.                        :
                               :
ALLIED SIGNAL, INC.,           :
et al.,                        :
                               :      E.D. Pa. Civil Action No.
     Defendants.               :      5:14-cv-05083-ER

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          April 15, 2015

## Table of Contents

I. BACKGROUND .................................................... 3

II.  LEGAL STANDARD ............................................. 4

III. PREEMPTION UNDER FEDERAL LAW ............................... 5

 A. Complete Preemption ........................................ 6

 B. The Labor Management Relations Act ......................... 7

IV.  ANALYSIS .................................................. 11

 A.  Negligence ............................................... 12

  1. An Employer's Duty ...................................... 13

  2. The Scope of the Duty ................................... 17

  3. No Preemption ........................................... 28

 B. Strict Liability .......................................... 29

 C. Conspiracy, Breach of Warranty, and Fraud ................. 33

  1. Conspiracy .............................................. 33

  2. Breach of Warranty ...................................... 34

  3. Fraud ................................................... 36

 D. Loss of Consortium and Wrongful Death ..................... 37

V.   CONCLUSION ................................................ 37

Before the Court is Plaintiffs' motion to remand to state court. Removal was based on the premise that Plaintiffs' Decedent's work-related claims against Decedent's employer are completely preempted by § 301 of the Labor Management Relations Act ("LMRA") due to the presence of a collective bargaining agreement at Decedent's workplace – a familiar argument in the federal courts. The instant case, however, arises in the wake of the recent Pennsylvania Supreme Court decision to permit employees to seek common law remedies against their employers for occupational diseases, such as those caused by asbestos exposure, that do not manifest until 300 weeks after the last occupational exposure. Tooey v. AK Steel Corp., 81 A.3d 851, 856 (Pa. 2013).

Prior to the decision in Tooey, employees such as the instant Decedent were essentially left without recourse to recover from their employers for their occupational injuries as the latent development of their asbestos disease placed their claims outside the limitations period under the Pennsylvania Workers' Compensation Act. Here, the issue is, whether work-related claims brought by a member of a bargaining unit against his employer, under the Tooey rationale, are also preempted by the LMRA? Under the circumstances of this case, the answer is no.

## I.   BACKGROUND

Frank and Mary Schaffer filed a complaint against various defendants in the Northampton County Court of Common Pleas on February 15, 2013. The complaint alleged that Mr. Schaffer developed mesothelioma as a result of his exposure to asbestos, inter alia, while working at Mack Trucks ("Defendant" or "Mack"). Mack was not named as a defendant in the initial complaint because, at the time, the Pennsylvania Workers' Compensation Act ("WCA") precluded employees from asserting tort claims for occupational injuries against their employers. Mr. Schaffer passed away on May 12, 2014. Mary Schaffer and Rita Stellar (as Personal Representative of the Estate of Frank J. Schaffer) ("Plaintiffs") filed an amended complaint on July 25, 2014. Plaintiffs pleaded claims of (1) Strict Liability; (2) Breach of Warranty; (3) Negligence; (4) Fraud; (5) Conspiracy; (6) Loss of Consortium; and (7) Wrongful Death. On August 1, 2014, Plaintiffs filed a second amended complaint to add Mack as a defendant as they could now proceed at common law against Mr. Schaffer's employer. See Tooey, 81 A.3d at 856.

Defendant Mack filed a notice of removal on September 3, 2014.[1] Defendant asserts that the Court has federal question jurisdiction pursuant to § 301 of the Labor Management Relations

_____

[1]      Plaintiffs do not question the timeliness of removal. See 28 U.S.C § 1446(b)(3).

Act. Plaintiffs filed the instant motion to remand on October 2, 2014. ECF No. 31. Plaintiffs assert that the Court lacks subject matter jurisdiction because no federal question is implicated by their complaint and their claims are not preempted by the LMRA. The Court held a hearing on Plaintiffs' motion to remand on January 15, 2015.[2] The matter is now ripe for disposition. For the reasons explained below, Plaintiffs' motion to remand will be granted.

## II.  LEGAL STANDARD

A district court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A civil action brought in a state court may be removed to the district court in the district where the state action is pending if the district court had original jurisdiction over the case. 28 U.S.C. § 1441. The removing party bears the burden of demonstrating that the district court has jurisdiction over the case. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004). Because federal courts are courts of limited jurisdiction, 28 U.S.C. §

---

[2]      The case was originally assigned to The Honorable Edward G. Smith. Judge Smith held the hearing on the instant motion. On March 3, 2015, in accordance with Local Rule of Civil Procedure 40.1(c)(2), the case was reassigned to The Honorable Eduardo C. Robreno as related to the consolidated asbestos products liability multidistrict litigation (MDL 875). See ECF No. 72.

1441 is to be strictly construed against removal. <u>La Chemise</u>
<u>Lacoste v. Alligator Co.</u>, 506 F.2d 339, 344 (3d Cir. 1974). "If
at any time before final judgment it appears that the district
court lacks subject matter jurisdiction, the case shall be
remanded." 28 U.S.C. § 1447(c).

## III. PREEMPTION UNDER FEDERAL LAW

Plaintiffs argue that they have only pleaded claims
based on state law and no federal question is implicated by
their claims. Plaintiffs state that resolution of the seven
pleaded causes of action "are completely and wholly resolvable
by state tort law." Pls.' Br. 12, ECF No. 31-2. Specifically,
Plaintiffs assert that no claim is being made under a collective
bargaining agreement and therefore removal pursuant to the LMRA
is improper. Defendant agrees that no claim under § 301 of the
LMRA appears on the face of Plaintiffs' complaint. Defendant,
however, asserts that Plaintiffs cannot avoid federal
jurisdiction by labeling their claims as strictly state law
claims.

It is undisputed that Mr. Schaffer was a member of the
bargaining unit under a collective bargaining agreement between
the International Union, United Automobile, Aircraft and
Agricultural Implement Workers of America ("the UAW" or "the
Union") and Mack, the employer. Based on this fact, Defendant

5

alleges that resolution of Plaintiffs' claims is substantially dependent upon an analysis of the terms of the collective bargaining agreements ("CBAs")[3] between Mack and the UAW. Defendant asserts that any claim that it is liable to Plaintiffs for Mr. Schaffer's injuries cannot be resolved without the Court's analysis of the CBAs, as the CBAs defined Mack's duties and obligations as they pertained to the union members of the UAW. Accordingly, Defendant states that Plaintiffs' state law claims are preempted and removal pursuant to the LMRA was proper.

### A.    Complete Preemption

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Following this doctrine, a case may not be removed on the basis of a federal defense, including a defense of ordinary preemption. Id. at 393. There exists, however, an "independent corollary" to this rule, when the preemptive force of a federal statute "is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal

---

[3]     Defendant states there were ten CBAs in effect during Mr. Schaffer's employment. See Def.'s Resp. 25, ECF No. 38-1.

claim." Id. This concept, known as "complete preemption,"
provides that any such claim is transformed, for jurisdictional
purposes, and necessarily "'arises under' federal law."
Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S.
Cal., 463 U.S. 1, 23 (1983).

    B.   The Labor Management Relations Act

       Section 301 of the LMRA is one of the few federal
statutes where the complete preemption corollary to the well-
pleaded complaint rule applies. Caterpillar, 482 U.S. at 393.
Section 301 states:

> Suits for violation of contracts between an employer
> and a labor organization representing employees in an
> industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may
> be brought in any district court of the United States
> having jurisdiction of the parties, without respect to
> the amount in controversy or without regard to the
> citizenship of the parties.

 29 U.S.C. § 185(a).

       Contract suits filed in state courts alleging a
violation of a collective bargaining agreement have long since
fallen under the scope of § 301. See Textile Workers Union of
Am. v. Lincoln Mills of Ala., 353 U.S. 448, 456-57 (1957)
(interpreting § 301 as a congressional mandate to the federal
courts to create a body of federal common law to handle labor
contract disputes); Local 174, Teamsters, Chauffeurs,
Warehousemen & Helpers of Am. v. Lucas Flour Co., 369 U.S. 95,

102-03 (1962) (holding that any suit filed in state court alleging violations of a provision of a labor contract must be brought under § 301 and be resolved by federal law). For this reason, "[a] state rule that purports to define the meaning or scope of a term in a [labor] contract suit . . . is preempted by federal labor law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985).

In Allis-Chalmers, the Supreme Court extended the reach of § 301 beyond suits alleging labor contract violations to suits involving tort claims.[4]

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

Id. at 211. The Court held that a state law tort claim must be treated as a claim arising under federal labor law and § 301 when resolution of the claim is "substantially dependent" on the construction of the terms of a collective bargaining agreement.

---

[4]      As in the instant case, Allis-Chalmers involved a member of a collective bargaining unit who brought state law tort claims against his employer. 471 U.S. at 203-06.

Id. at 220.[5] In so holding, however, the Court stressed that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Id. at 211.

The Third Circuit addressed § 301 preemption in Beidleman v. The Stroh Brewery Co., 182 F.3d 225 (3d Cir. 1999), when a group of employees brought suit in a Pennsylvania state court against their employer and union for (1) fraudulent misrepresentation; (2) tortious interference with contractual relations; and (3) civil conspiracy. In deciding whether the district court correctly denied the plaintiffs' motion to remand, the court analyzed the elements that the plaintiffs would have to prove in order to prevail as to each distinct state law claim. Id. at 232-33. The court ultimately concluded that all three claims were preempted by § 301. Id. at 236.

First, as to the fraud claim, the Court noted that the plaintiffs' complaint alleged that the "misrepresentation" at issue stemmed directly from the labor contract.[6] Id. at 234.

---

[5]      See also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute.").

[6]      The Beidleman court distinguished the plaintiffs' fraud claim from two prior Third Circuit cases where the alleged fraud arose out of agreements distinct from the existing

Next, as to the tortious interference claim, the court concluded that the allegations in the plaintiffs' complaint were "inextricably intertwined" with the consideration of the labor agreement because the "duties imposed and rights established through the state tort . . . derive[d] from the rights and obligations established by the [labor] contract." Id. at 235 (alteration in original) (quoting Allis-Chalmers, 471 U.S. at 217) (internal quotation marks omitted). Finally, as to the plaintiffs' civil conspiracy claim, the court noted that the alleged "unlawful act" of the conspiracy was the employer's prevention of the employees from exercising certain contractual rights under the labor agreement. Id. at 236. The court held that under the circumstances of the case it could not resolve the claim without first identifying what rights were available under the contract, which "substantially depended" upon the court's analysis of the labor agreement's terms. Id. (citing Allis-Chalmers, 471 U.S. at 211). Accordingly, the court affirmed the district court's decision to deny the plaintiffs' motion to remand. Id. at 237.

---

collective bargaining agreements. See Trans Penn Wax Corp. v. McCandless, 50 F.3d 217 (3d Cir. 1995); Voilas v. Gen. Motors Corp., 170 F.3d 367 (3d Cir. 1999).

## IV.   ANALYSIS

Plaintiffs allege that Mr. Schaffer developed mesothelioma as a result of his exposure to asbestos, <u>inter alia</u>, while working at Defendant Mack's facility in Allentown, Pennsylvania. Short Form Compl. ¶¶ 8-10. Plaintiffs allege that Defendant Mack "has been engaged in mining, processing, manufacturing, sale, supply and/or distribution of asbestos-containing products and/or machinery and/or equipment requiring or specifying the use of asbestos and/or asbestos-containing products, including but not limited to automotive friction parts." Fifty-Fourth Amendment to Master Compl. ¶ 2. Plaintiffs state seven causes of action against Mack: (1) Strict Liability; (2) Breach of Warranty; (3) Negligence; (4) Fraud; (5) Conspiracy; (6) Loss of Consortium; and (7) Wrongful Death.[7] See

---

[7]       Although not unique to this Court, or to asbestos litigation in general, the substance of Plaintiffs' complaint merits discussion. Asbestos litigation in Northampton County, Pennsylvania is governed by a "Master Complaint" that alleges all of the seven aforementioned causes of action. When a plaintiff files a complaint in Northampton County, the individual files a "Writ of Summons" or a "Short Form Complaint" that adopts certain allegations set forth in the Master Complaint. In this case, it appears that Plaintiffs have adopted all seven causes of action against each defendant named in their complaint, including Mack Trucks. The Court notes that Plaintiffs' complaint is really a "shotgun" pleading in that there are no specific allegations as to each defendant, and Plaintiffs simply incorporate all of the previous counts and allegations by reference against all defendants. See <u>Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the

Short Form Compl. ¶¶ 1-7; Master Compl. 12-49. Guided by the framework set out by the Third Circuit in <u>Beidleman</u>, the Court will analyze all of Plaintiffs' state law claims to determine if they are preempted by § 301.

A.   <u>Negligence</u>[8]

In Pennsylvania, a negligence cause of action comprises the following elements:

(1)   a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;

(2)   defendant's failure to conform to the standard required;

(3)   a causal connection between the conduct and the resulting injury;

(4)   actual loss or damage resulting to the plaintiff.

<u>R.W. v. Manzek</u>, 888 A.2d 740, 746 (Pa. 2005). Whether a defendant owes a duty of care to a plaintiff is a question of law in Pennsylvania. <u>Kleinknecht v. Gettysburg Coll.</u>, 989 F.2d

---

allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.").

[8]      The Court begins with Plaintiffs' negligence claim because that was the focus of the argument at the hearing. <u>See</u> Hr'g Tr. 6, ECF No. 73 ("[W]e recognize that there will be issues with regard to strict liability and that eventually this may come down to a negligence claim.").

1360, 1366 (3d Cir. 1993). In the instant case, Plaintiffs allege, inter alia, that:

> [Mack] knew, or in the exercise of reasonable care should have known, that persons employed as [Mr. Schaffer] would be required to and would come into contact with and work in close proximity to [Mack's] asbestos products, which [Mack] knew, or in the exercise of ordinary care should have known, were health and life-threatening.

Pls.' Br. 4; see also Master Compl. 17. Accordingly, Plaintiffs' negligence claim, on its face, alleges that Defendant Mack breached its duty as an employer to provide a safe work environment for employees such as Mr. Schaffer.[9]

### 1.   An Employer's Duty

"Under the common law . . . the employer . . . owes [its] employees a duty to exercise reasonable care in providing a safe workplace." Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler, 481 U.S. 851, 859 (1987). In certain instances, Pennsylvania has adopted this common law employer-employee duty.[10] The Pennsylvania Supreme Court described this duty over a

---

[9]      Plaintiffs' complaint lists a litany of ways in which Defendant allegedly breached its duty to provide a safe work environment. Such allegations include, inter alia, a failure to advise Decedent of the dangerous characteristics of asbestos products, a failure to place warnings on asbestos products, and a failure to provide Mr. Schaffer with the knowledge as to what safeguards and/or protective equipment he should have used to protect him from asbestos exposure. See Master Compl. 18-20.

[10]      Defendant concedes this in its memorandum. See Def.'s Resp. 24 (noting that "employers have a common law duty to provide a safe place to work").

century ago in <u>Finnerty v. Burnham</u>, 54 A. 996 (Pa. 1903), as
follows:

> The duty of the master to furnish, maintain, and
> inspect appliances and instrumentalities used by
> his employés is thus stated in 20 Am. & Eng. Ency. of Law
> (2d Ed.) 38, citing numerous authorities, including
> some of our own decisions, to sustain the text: '<u>It is
> the duty of the master to use reasonable care to
> furnish his employés with a reasonably safe place of
> work and with reasonably safe machinery and
> appliances.</u> The master's duty in this regard does not
> end here, but is a continuing one. The law imposes on
> him the further obligation of using reasonable care to
> keep such place of work and such instrumentalities in
> a reasonably safe condition, and this, of course, is
> to be accomplished by a proper and timely inspection
> for defects, and the repair thereof.' And on page 93
> of the same work it is said: 'Where the defect through
> which the injury occurs is in the original
> construction of the appliance or instrumentality,
> notice thereof to the master is unnecessary. In case
> of structural defects, knowledge thereof by the master
> will be inferred. <u>This doctrine is no more than the
> application of the general rule that it is the
> master's duty to exercise ordinary care in providing
> tools, machinery, and appliances that are reasonably
> safe.</u>'

<u>Id.</u> at 997 (emphasis added); <u>see also</u> <u>Greer v. U.S. Steel Corp.</u>,
380 A.2d 1221, 1222 (Pa. 1977).

The Pennsylvania Workers' Compensation Act,[11] however,
"substitutes a quick and inexpensive scheme to provide
compensation for work-related injuries in place of the common
law process where the employee must sue the appropriate parties
for damages. Employers pay benefits at a set rate and they are

---

[11]     Act of June 2, 1915, P.L. 736, No. 338 (as amended, 77
P.S. §§ 1-1041.1; 2501-2626).

immune from common-law liability." <u>Sporio v. Workmen's Comp.</u>
<u>Appeal Bd. (Songer Constr.)</u>, 717 A.2d 525, 528 (Pa. 1998). Prior
to the Act's passage, "[i]t was well accepted in Pennsylvania
that a common law cause of action could be asserted for
negligence of the employer for injuries to an employee resulting
from failure to properly maintain the work place." <u>Greer</u>, 380
A.2d at 1222. "The rule was true before compensation could be
had for diseases, and was true as to diseases not covered by the
Act after its adoption." <u>Id.</u> (citations omitted). Despite the
WCA's scope, the common law duty to provide a safe work
environment remains, and, in certain circumstances, an employer
can face a common law claim for negligence if that duty is
breached. <u>See</u> <u>Lord Corp. v. Pollard</u>, 695 A.2d 767, 769 (Pa.
1997) (holding that decedent employee's common law negligence
claim against employer was not barred when disease was not
compensable under the WCA or the Occupational Disease Act); <u>see</u>
<u>also</u> <u>Boniecke v. McGraw-Edison Co.</u>, 401 A.2d 345, 346 (Pa. 1979)
(rejecting the contention that the WCA and the Occupational
Disease Act deprive Pennsylvania courts of jurisdiction over
claims arising from diseases not covered by these acts);[12] <u>Dooner</u>
<u>v. DiDonato</u>, 971 A.2d 1187, 1202 (Pa. 2009) (recognizing a state

---

[12]      In <u>Boniecke</u>, the court noted that "[t]he condition in
which appellants kept their premises is alleged to violate the
employer's common law duty to provide a safe place to work." 401
A.2d at 346 n.2.

law tort claim for negligence arising under a duty to provide a safe work environment).

Recently, the Pennsylvania Supreme Court created a new avenue by which individuals occupationally exposed to asbestos can proceed at common law outside the scope of the WCA. In Tooey, two employees developed mesothelioma and filed claims against their former employers after they were occupationally exposed to asbestos. 81 A.3d at 856. The employers moved for summary judgment pursuant to the exclusivity provision of the WCA. Id. The employees argued that the WCA did not apply because the disease fell outside the jurisdiction, scope, and coverage of the WCA.[13] Id. The Pennsylvania Supreme Court agreed and held that the employees could pursue common law causes of action against their employers for injuries relating to occupational diseases manifesting more than 300 weeks after the last occupational exposure. Id. at 865. In doing so, the court stated the following:

---

[13]     The WCA states that "whenever occupational disease is the basis for compensation . . . it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment . . . ." 77 P.S. § 411(2). The employees argued that they could not seek compensation under the WCA because their injuries did not manifest until 780 and 1300 weeks after their employment-based exposure to asbestos. Accordingly, they noted, if the court read the statute to preclude the occupational claims at issue, the WCA's 300-week time provision essentially granted an employer "full immunity" against all mesothelioma claims.

> Employers, like any other entity not covered by the Act, will be subject to traditional tort liability requiring a showing by the plaintiff of, <u>inter alia</u>, negligence on the part of the employer, and employers will retain all of their common law defenses. Plaintiffs, in turn, will bear the higher burden of proof in terms of causation and liability.

<u>Id.</u>

### 2.   The Scope of the Duty

Defendant agrees that "no claim under Section 301 appears on the face of Plaintiffs' Complaint," however, it asserts that "the trier of fact and law would have to interpret the CBAs to determine the nature, scope and extent of the duties Mack owed to Mr. Schaffer." Def.'s Resp. 11. In effect, Defendant is arguing that the common law duty it owed to Mr. Schaffer was in some way altered by the CBAs. Accordingly, Defendant asserts that Plaintiffs' state law claim is preempted because Plaintiffs' claim substantially depends on (or is "inextricably intertwined" with)[14] the Court's interpretation of these labor agreements. Defendant cites to, <u>inter alia</u>, <u>Allis-Chalmers</u>, <u>Hechler</u>, <u>Rawson</u>,[15] and <u>Beidleman</u> in support of this contention. Each case is distinguishable, and its teachings are not applicable to the facts of this case.

---

[14]      In <u>Berda v. CBS Inc.</u>, 881 F.2d 20, 27 n.8 (3d Cir. 1989), the court stated that "substantially depends" and "inextricably intertwined" were equivalent and interchangeable.

[15]      <u>United Steelworkers of Am., AFL-CIO-CLC v. Rawson</u>, 495 U.S. 362 (1990).

In <u>Allis-Chalmers</u>, a Wisconsin employee brought a state law tort action against his employer for the bad-faith handling of disability-benefit payments due under a CBA. 471 U.S. at 206. The employee alleged that his employer failed to make the required disability payments under the plan negotiated in the CBA, and the employer's failure to do so breached the Wisconsin state law duty to act in "good faith" in paying disability benefits. <u>Id.</u> The Court held that the employee's state law claim was preempted because the duty to the employee, of which the tort was a violation, was created by the CBA and was without existence independent of the agreement. <u>Id.</u> at 218. Under Wisconsin law, the Court explained, "the tort exists for breach of a duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract, the scope of which, crucially, is ascertained from a consideration of the contract itself." <u>Id.</u> at 216 (internal quotation marks omitted). Therefore, "[t]he duties imposed and rights established through the state tort thus derive from the rights and obligations established by the contract." <u>Id.</u> at 217.

Here, the duty that was allegedly violated is one imposed by Pennsylvania common law and does not derive from any CBA between Mack and the Union. Importantly, unlike the duty in <u>Allis-Chalmers</u>, the duty to provide a safe work environment preceded and exists independent of the CBAs. See <u>Finnerty</u>, 54 A.

18

at 997; <u>Greer</u>, 380 A.2d at 1222; <u>see also</u> <u>Hechler</u>, 481 U.S. at
859. Indeed, Defendant admits this fact. <u>See</u> Def.'s Resp. 22,
24-25 (citing various Pennsylvania cases pertaining to an
employer's duty to its employees). Defendant's argument that the
Court will have to analyze the CBAs to determine the "scope" of
the duty is not persuasive. Defendant states that the CBAs
provided "numerous provisions concerning workplace safety and
exposure to a variety of hazardous conditions," including, <u>inter</u>
<u>alia</u>, the following:

- The CBAs provided for a joint health and safety
  committee to monitor and maintain safe workplace
  conditions.

- The CBAs provided for employees to wear various safety
  items including safety glasses, gloves, shoes,
  coveralls, and raincoats which the company was
  required to provide at no cost, or for purchase at the
  company's cost.

- The 1964 CBA states that "[i]n the event an employee
  complains of a safety condition which he alleges as
  presenting serious danger to life or limb, he shall
  first address his complaint to his immediate
  supervisor who shall make an immediate determination
  of the complaint."

- The 1974 CBA established an International Joint
  Committee on Health and Safety consisting of union and
  company representatives. The Committee was tasked with
  reviewing safety and health programs and developing
  and recommending training programs to promote health
  and safety.

- The 1980 CBA established that if an employee complains
  of a safety condition "presenting serious danger to
  life or limb," the employee shall first address the
  complaint to the immediate supervisor who shall make
  an immediate determination of the complaint. The

19

employee will not be required to operate under a condition he alleges presents a serious danger to life or limb until a Safety Engineer makes a determination.

- Each of the CBAs contained detailed grievance and arbitration procedures that set forth the agreed-upon means for addressing alleged breaches of the CBAs or any other disputes arising under the CBAs.

See Notice of Removal ¶¶ 39-47, ECF No. 1.

First, Defendant has not pointed to any portion of the CBAs that somehow modifies - either by enlarging, diminishing or even refining - the duty imposed by the common law. Even if the common law duty was somehow expanded by the CBAs, Plaintiffs are not basing their claim on any expansion because there is no reference to a CBA in their complaint. See Voilas v. Gen. Motors Corp., 170 F.3d 367, 373-74 (3d Cir. 1999) (noting that "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement" (citing Caterpillar, 482 U.S. at 394-95)). Moreover, there is no contention that Mr. Schaffer explicitly waived his common law right to assert a negligence cause of action against his employer.[16] Second, Defendant has not pointed to any part of a

_____

[16]     See, e.g., Richter v. Merchs. Fast Motor Lines, Inc., 83 F.3d 96, 97 (5th Cir. 1996) (per curiam) (holding employee's negligence claim against his employer was preempted by the LMRA). In Richter, the court noted that the CBA at issue provided the exclusive remedy for settling disputes involving

CBA that relates to the unsafe work condition at issue in this case – the presence of asbestos in the workplace.[17] Therefore, Defendant has not shown that the scope of the duty is at issue, nor has it demonstrated that the Court will be required to "interpret" any of the CBAs' provisions. See Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162 (3d Cir. 2014) ("The removing party . . . carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court. Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand.").

---

negligence on the part of the employer and stated that "in any proceeding concerning an injury . . . sustained in the course of employment . . . the [employer] further agrees to waive its common law defenses . . . ." Id. The court also cited a paragraph of the pertinent CBA that stated "it be the exclusive means for settling disputes involving on-the-job injuries for employees in [the plaintiff's position]." Id. Moreover, the CBA also provided that employees must exhaust the arbitration provisions before pursuing any cause of action within the scope of the agreement, and negligence was specifically described within that scope. Id.

[17]     Some of the provisions of the CBAs that Defendant cites to involve procedures that the employer will follow if an employee complains of a "potential" workplace safety concern. Importantly, Plaintiffs' negligence claim is not based on Defendant's failure to follow a procedure established by a CBA. See Arceneaux v. Amstar Corp., No. 03-3588, 2004 WL 574718, at *4 (E.D. La. Mar. 22, 2004) ("Plaintiffs do not allege that defendants violated the applicable health and safety provisions of the CBA. To determine whether defendants violated their duty to plaintiffs, a court need look only as far as [Louisiana state law]."); see also McKnight v. Dresser, Inc., 676 F.3d 426, 434 (5th Cir. 2012) (holding employees' negligence claim not preempted by LMRA).

Defendant cites to various portions of the CBAs relating to, _inter_ _alia_, workplace health and safety; however, the pertinent question is not whether Plaintiffs' claim relates to a subject contemplated by the CBAs. Rather, the question here is whether Plaintiffs' claim requires the Court to "interpret" a provision of a CBA. See Kline v. Sec. Guards, Inc., 386 F.3d 246, 256 (3d Cir. 2004). In Kline, various union employees brought an action in state court against their employers alleging numerous violations of Pennsylvania law, including: (1) claims under the Pennsylvania Wire Tap Act; (2) claims under the Pennsylvania Private Detective Act; and (3) various common law tort claims including invasion of privacy, negligent or reckless supervision, and failure to exercise reasonable care to protect the employees. Id. at 250-51. The employers were allegedly monitoring conversations between employees through a video feed with built-in microphones at the entrance to the facility. Id. The employers removed the case pursuant to the LMRA and the district court denied the employees' motion to remand. Id. On appeal, the Third Circuit held that the employees' claims were not preempted by § 301 and instructed the district court to remand the case to state court. Id. at 263.

The crux of the dispute involved the employers' contention that the employees' state law claims went to the "core" of the employers' "management rights," which was a

22

subject of collective bargaining. Id. at 255. The employers argued that the state claims "necessarily implicated" the "Management Rights" and "Shop Rules" clauses of the CBA between the employers and the union. Id. The court held that "[w]hile it is true that the CBA may be consulted in the course of litigating [the employees'] claims, it does not follow that their claims are completely preempted." Id. Further,

> [a]lthough their state claims relate to conduct that Defendants engaged in at Appellants' workplace, those claims . . . are nonetheless grounded in substantive rights granted under state law.  Moreover, the CBA itself makes no mention of the use of video cameras, microphones, or other surveillance of any kind. Like Trans Penn Wax [Corp. v. McCandless, 50 F.3d 217 (3d Cir. 1995)], the essential question is not whether Appellants' claims relate to a subject - management rights - contemplated by the CBA . . . . Rather, the dispositive question here is whether Appellants' state claims require any interpretation of a provision of the CBA.

> Although [Defendants] rely upon the "Management's Rights" and "Shop Rules" clauses of the CBA, they do not point to any specific provision of these clauses that must be interpreted in order to resolve Appellants' claims. Nor can we identify any provision that would require interpretation. A finding of § 301 preemption is not mandated simply by the contention that Appellants' state law claims "necessarily implicate" the CBA.

Id. at 256.

Defendant Mack's arguments are nearly identical to the arguments espoused by the employers, and rejected by the Third Circuit, in Kline. Here, Defendant points to workplace and safety clauses in the CBAs and asserts that complete preemption

must apply to Plaintiffs' negligence claim. This argument fails. The Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty. While it is possible that Defendant could point to some portion of a CBA in arguing that it acted reasonably, or to establish that it provided some type of warning as to certain occupational hazards, whether these statements provide a defense (in that they show Defendant acted reasonably, or that Defendant did not breach its duty of care) is a question of fact for the jury. See Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 232 (3d Cir. 1995) (holding that in interpreting the employees' fraud claim, whether there was "justifiable reliance" and "extreme and outrageous conduct" were purely factual questions which did not require interpretation of the CBA or substantially depend on its construction); see also Kleinknecht, 989 F.2d at 1371 (holding that whether a duty was breached in a negligence action is a question for the factfinder). In fact, many of these defenses may be better demonstrated with evidence outside the CBAs.[18]

Importantly, "[t]he fact that a collective bargaining agreement was part of the context in which an employee's claim must be addressed. . . [does] not trigger complete preemption in

---

[18]        For instance, coworkers testifying that they always wore masks when working around asbestos products, or that they saw signs around the premises that warned of the dangers of asbestos.

the absence of some substantial dispute over the meaning of the collective bargaining agreement." Kline, 386 F.3d at 257; see also Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").[19] Here, there is simply no dispute over the meaning of any term or provision cited by Defendant in the CBAs. As the Pennsylvania Supreme Court held in Tooey, Defendant Mack will be subject to traditional tort liability; however, it will retain all of its common law defenses, while Plaintiffs will bear the higher burden of proof in terms of causation and liability. 81 A.3d at 865 (comparing claims brought pursuant to the WCA with common law negligence claims).

For different reasons, Hechler and Rawson are also inapplicable. In Hechler, the Court was presented with the question of whether a state law tort claim involving a union's breach of a duty of care to provide a member of the bargaining unit with a safe workplace was preempted by § 301. 481 U.S. at 853. The Court stressed that "[u]nder the common law . . . it is

---

[19]     See also Lingle, 486 U.S. at 413 n.12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.").

the <u>employer</u>, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." Id. at 859. Because the union's duty arose from the collective bargaining agreement, and therefore the scope of the duty substantially depended on the court's interpretation of the CBA, the plaintiff's state law claim was preempted under § 301. Id. at 862. Here, Plaintiffs' negligence claim is brought against Mr. Schaffer's employer, not his union. Moreover, the duty does not arise from the collective bargaining agreements; rather, it exists independent of the CBAs. Therefore, Hechler is not on point.

Similarly in United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362 (1990), survivors of four miners killed in a fire brought wrongful death actions against the decedents' union. The Court held that the duty that the plaintiffs' tort suit relied on was allegedly assumed by the union in the collective bargaining agreement. Id. at 371. The Court noted that this "is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society." Id. Moreover, there was no indication that the union committed "an act that could be unreasonable irrespective of who committed it and could foreseeably cause injury to any person who might possibly be in the vicinity." Id. Rather, the pertinent duty arose out of the

26

CBA and must be interpreted by federal labor law. Id. at 371-72.
Accordingly, the plaintiffs' claims were preempted by § 301. Id.
Again, the duty alleged in Rawson did not exist independent of
the CBA. For the same reason as in Hechler, the instant case is
distinguishable.

Finally, Defendant's reliance on Beidleman is also
misplaced. While the facts of Beidleman are at least analogous,
in that the employees brought claims against their employer, the
substantive claims in that case are distinct from the instant
negligence claim. See 182 F.3d at 229 (noting employees' claims
against their employer were for fraudulent misrepresentation,
tortious interference with contractual relations, and civil
conspiracy). Moreover, all of the employees' claims in Beidleman
specifically referenced the labor agreement in question. Id. at
237. Therefore, the court was compelled to interpret what rights
and duties flowed from that agreement. Id. at 236. ("The
employees' contention that their state-law claims related merely
to the existence of the [CBA] is contradicted by the allegations
in their own complaint."). The same cannot be said in the
instant case.[20]

---

[20]    Defendant also cites to three unreported cases, none
of which is binding on this Court and each of which is
distinguishable. First, Negron v. Oxford Airport Technical
Servs., No. 08-4326, 2009 WL 50158, at *1 (E.D. Pa. Jan. 7,
2009) (Shapiro, J.), involved an employee bringing claims
against a union, and not his employer. Moreover, preemption was

3.  <u>No Preemption</u>

In sum, "not every dispute concerning employment, or
tangentially involving a provision of a collective-bargaining
agreement is preempted by § 301 or other provisions of the
federal labor law." <u>Allis-Chalmers</u>, 471 U.S. at 211. Here,
Plaintiffs have pleaded a state law claim for negligence
involving, <u>inter alia</u>, an alleged breach of a duty to provide a
safe work environment. Pennsylvania recognizes such a duty as a
matter of law, and the Pennsylvania Supreme Court has recently
permitted former employees to pursue such claims as residing
outside the scope of the Pennsylvania Workers' Compensation Act.
Defendant has not shown how the common law duty is impacted by
the mere presence of various CBAs, nor has it shown that the
Court will have to interpret any of the terms of the various
CBAs in order to adjudicate Plaintiffs' negligence claim.

---

found pursuant to the Railway Labor Act, and not the LMRA.
Second, <u>Dougherty v. Am. Tel. & Tel. Co.</u>, No. 86-1060, 1989 WL
75114, at *1 (W.D.N.Y. July 5, 1989), involved claims for
negligent misrepresentation and fraud. Again, the plaintiffs
relied on much of the CBA in their complaint to state causes of
action against the defendant. Finally, <u>Dent v. Nat. Football
League</u>, No. 14-02324, 2014 WL 7205048, at *1 (N.D. Cal. Dec. 17,
2014), involved former NFL players from different teams bringing
claims against the NFL for, <u>inter alia</u>, various negligence-based
claims involving the NFL's failure to police the health and
safety of its players. At the outset, the court determined that
"there is simply no case law that has imposed upon a sports
league a common law duty to police the health-and-safety
treatment of players by the clubs." <u>Id.</u> at *3. Moreover, the
court based its analysis on the fact that many of the duties
that were allegedly breached stemmed directly from the CBAs at
issue.

Therefore, in the instant case, Plaintiffs' negligence claim is not preempted by § 301.

    B.   <u>Strict Liability</u>

       Pennsylvania adopted § 402A of the Restatement (Second) of Torts in <u>Webb v. Zern</u>, 220 A.2d 853, 854 (Pa. 1966), which states:

> § 402A Special Liability of Seller of Product for Physical Harm to User or Consumer
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>     (a) the seller is engaged in the business of selling such a product, and
>
>     (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>     (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
>     (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

       Recently, the Pennsylvania Supreme Court reaffirmed and refined the application of the Second Restatement in Pennsylvania strict liability cases. See <u>Tincher v. Omega Flex,</u>

29

_Inc._, 104 A.3d 328, 400 (Pa. 2014). The court explained that the
strict liability action "sounds in tort, _i.e._ the cause involves
breach of duties 'imposed by law as a matter of social policy,'
rather than contract, _i.e._, the cause involves breach of duties
'imposed by mutual consensus agreements between particular
individuals.'" _Id._ (citing _Ash v. Cont'l Ins. Co._, 932 A.2d 877,
884 (Pa. 2007)). The court elaborated on the duty imposed by
Pennsylvania law:

> The duty spoken of in strict liability is intended to
> be distinct from the duty of due care in negligence.
> Restatement (2d) of Torts § 402A(2).
>
> The duty in strict liability pertains to the duty of a
> manufacturer and of suppliers in the chain of
> distribution to the ultimate consumer. The Restatement
> offers a functional shorthand for the balancing of
> interests implicit in assessing the existence of the
> strict liability duty in tort between those in a
> consumer/user-supplier relationship. In incorporating
> the strict liability cause of action into Pennsylvania
> common law, the _Webb_ Court expressly relied upon the
> Second Restatement and relevant scholarly commentary
> to supply its justification. 220 A.2d at 854. Indeed,
> comments b, c, g, and m to Section 402A of the Second
> Restatement offer reasoned consideration of factors
> relevant in Pennsylvania to explain the existence and
> nature of a seller's duty in tort to a consumer. In
> part, comment c explains that:
>
>> [A] seller, by marketing his product for use and
>> consumption, has undertaken and assumed a special
>> responsibility toward any member of the consuming
>> public who may be injured by it; that public has
>> a right to and does expect, in [the] case of
>> products which it needs and for which it is
>> forced to rely upon the seller, that reputable
>> sellers will stand behind their goods; that
>> public policy demands that the burden of
>> accidental injuries caused by products intended

> for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that consumer of such products is entitled to the maximum of protection at the hands of someone, and proper persons to afford it are those who market the products.

Restatement (2d) of Torts § 402A cmt. c.

> This reasoning explains the nature of the non-delegable duty articulated by the Second Restatement and recognized in Webb. Stated affirmatively, a person or entity engaged in the business of selling a product has a duty to make and/or market the product - which "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold" - free from "a defective condition unreasonably dangerous to the consumer or [the consumer's] property." Accord Restatement (2d) of Torts § 402A(1).

Tincher, 104 A.3d at 383 (alterations in original) (emphasis added) (citations omitted). In order to demonstrate a breach of this duty, "a plaintiff must prove that a seller (manufacturer or distributor) placed on the market a product in a 'defective condition.'" Id.

As to their strict liability claim, Plaintiffs' complaint alleges, inter alia, the following:

- Mr. Schaffer was a steelworker and was required to work around asbestos products manufactured and/or used by Defendant.

- Defendant's asbestos products were defectively designed and/or constructed because they contained harmful and latently dangerous asbestos which endangered the life and health of the ultimate users, including Mr. Schaffer.

- Defendant failed to provide adequate warnings or instructions about the dangers, risks, and harm inherent in its asbestos products.

- Defendant's asbestos products were placed into the stream of commerce knowing that they would be used without inspection for such defects.

See Master Compl. 12-15.

Defendant asserts that Plaintiffs' strict liability claim is preempted for the same reason that Plaintiffs' negligence claim is preempted - that being the Court must interpret the CBAs to define the scope of the "duty" owed to Mr. Schaffer. For many of the same reasons stated above, the Court disagrees. First, as the Pennsylvania Supreme Court stated, the duty in a strict liability cause of action is distinct from the duty owed in a negligence action. See Tincher, 104 A.3d at 400. Here, Defendant Mack had a duty to make and/or market its product free from a defective condition unreasonably dangerous to the consumer, id. at 383, yet none of the portions of the CBAs cited by Defendant relate at all to the scope of this duty imposed under strict liability. Accordingly, Plaintiffs' strict liability claim is not preempted by § 301.[21]

---

[21] The Court notes that it is not clear whether Mr. Schaffer was a "consumer" of any of Mack's products that it placed on the market (or that it manufactured and/or supplied). At the hearing on Plaintiffs' motion, the Court addressed whether Plaintiffs intended to proceed with their strict liability claim. Plaintiffs stated that they did not wish to abandon the claim yet, although they conceded that there would

C.   <u>Conspiracy, Breach of Warranty, and Fraud</u>

Because of the nature of the "shotgun" pleadings in this case, it is not clear whether these three claims even pertain to Defendant Mack, nor is it clear whether they would survive a motion to dismiss by Mack. That question, however, is not for this Court to decide, nor is it a reason to hold that the claims are preempted by § 301. Accordingly, to the extent that these claims are asserted against Mack, the Court will briefly address each claim.[22]

1.   <u>Conspiracy</u>

In Pennsylvania, a civil conspiracy is a "combination of two or more persons to do an unlawful act or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." <u>Beidleman</u>, 182 F.3d at 235-36 (citing <u>Landau v. W. Pa. Nat'l Bank</u>, 282 A.2d 335, 338 (Pa. 1971)). Here, Plaintiffs allege, <u>inter alia</u>, that:

> Defendants formed confederacies and entered into agreements or tacit understandings to individually, jointly, and in conspiracy with each other, market asbestos products by unlawful means, including <u>inter alia</u>, their tortious conduct of suppressing their knowledge of the dangers of asbestos and of placing into the stream of commerce without adequate testing or warnings, their asbestos products which were

be issues in ultimately satisfying their burden of proof. <u>See</u> Hr'g Tr. 6.

[22]   Notably, none of these claims were addressed at the hearing on Plaintiffs' motion.

unreasonably dangerous, ultrahazerdous, deleterious, carcinogenic and potentially deadly.

Master Compl. 23.

Plaintiffs' claim for conspiracy is not preempted by § 301. As previously stated, the Court will not need to interpret any part of the CBAs in order for Plaintiffs to establish their claim for civil conspiracy, nor is Plaintiffs' civil conspiracy claim based on any right or duty created by the collective bargaining agreement.[23] Accordingly, Plaintiffs' claim for civil conspiracy is not preempted by § 301.

2.   <u>Breach of Warranty</u>

Under Pennsylvania law, there is an implied warranty "[w]here the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." 13 Pa. Cons. Stat. § 2315. Plaintiffs allege, <u>inter alia</u>, that:

Defendants . . . impliedly warranted that their asbestos products were of good and merchantable

---

[23]     In <u>Beidleman</u>, the employees' complaint stated that the defendants, "acting in concert and for common purposes and goals, agreed among themselves to commit an unlawful act or to do an otherwise unlawful [sic] act by unlawful means, namely, by conspiring to lie about the existence of the 1985 closing agreement <u>and prevent the Plaintiffs from exercising those contractual rights</u> arising thereunder." 182 F.3d at 236 (quoting the pleadings) (alteration in original). Accordingly, the employees specifically referenced the CBA in their complaint and alleged that their rights were established by the labor agreement. No such claim is made here.

> quality and fit and suitable for the particular use
> for which said products were intended. The implied
> warranty was breached in that harmful . . . dangerous
> asbestos dust and fibers were released into the air
> and atmosphere where [Mr. Schaffer] carried out his
> duties using and/or exposed to said products.

Master Compl. 16.

Again, while it is not clear from Plaintiffs'
complaint whether Mr. Schaffer was a "buyer" of any goods sold
by Defendant Mack, there is simply no need for the Court to
interpret the provisions of the CBAs in resolving this claim.
Indeed, this claim does not appear to relate in any fashion to
Mr. Schaffer's employment with Mack. See Kline, 386 F.3d at 256-
57 (stating that "look[ing] to the CBA merely to discern that
none of its terms is reasonably in dispute does not require
preemption") (quoting Cramer v. Consol. Freightways Inc., 255
F.3d 683, 691 (9th Cir. 2001)). Therefore, the CBAs are
completely inapplicable, despite Defendants' contention that
"interpretation of the CBAs is required to determine whether and
to what extent Mack made any 'warranties,' the terms and
conditions of such 'warranties,' and whether the 'warranties'
Plaintiffs allege to have been breached by Mack are part of the
employment contract." Def.'s Resp. 24. Accordingly, Plaintiffs'
claim for breach of warranty is not preempted by § 301.

3.   <u>Fraud</u>

For the same reasons, Plaintiffs' fraud claim is not preempted. Under Pennsylvania law, "[f]raud must be averred with particularity by the following elements: 1) a misrepresentation; 2) a fraudulent utterance of it; 3) the maker's intent that the recipient be induced thereby to act; 4) the recipient's justifiable reliance on the misrepresentation; and 5) damage to the recipient proximately caused." <u>Sevin v. Kelshaw</u>, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992). Plaintiffs allege, <u>inter</u> <u>alia</u>, that:

> Defendants aided, assisted, and encouraged the distribution and sale of their products, without adequate warnings, other safety precautions or change in design, by the participation in, support of and the use of industry-wide and/or parallel product research and development, exchanges of information, marketing, advertising, promotion and/or similar endeavors, all of which such effort inured to the joint and mutual benefit of all such suppliers in the wide and continued distribution, sale and use of Defendants' products.

Pls.' Br. 4; <u>see also</u> Master Compl. 21. Again, Plaintiffs' allegations as to this claim do not relate to his employment with Mack, nor do any of the portions of the CBAs cited by Defendant require this Court's interpretation in potentially resolving the claim. Accordingly, Plaintiffs' claim for fraud is not preempted by § 301.

D.     Loss of Consortium and Wrongful Death

The parties agree that these claims are derivative of the underlying claims. Accordingly, no additional analysis is necessary, and Plaintiffs' claims for loss of consortium and wrongful death are not preempted by § 301.

## V.    CONCLUSION

Plaintiffs' claims involve state law rights that exist independent of any collective bargaining agreement. The Court is not required to interpret any provision of the CBAs, nor do Plaintiffs' claims raise "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." Allis-Chalmers, 471 U.S. at 211. Accordingly, Plaintiffs' claims are not preempted by § 301.

For all of the reasons stated above, Plaintiffs' motion to remand will be granted.